IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| VLADISLAV NAZAROV and BRIGANTINE'S FRESHERY LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BRIGANTINE, *et al.*, <br><br> Defendants. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br> No. 22-5478 (KMW-AMD) <br><br> **OPINION** |

APPEARANCES:

PETER M. KOBER. ESQ.
1864 RTE 70 EAST
CHERRY HILL, NJ 08003

    *Counsel for Plaintiffs*

ERIN R. THOMPSON. ESQ.
BIRCHMEIER & POWELL, ESQ.
1891 STATE HIGHWAY 50
P.O. BOX 582
TUCKAHOE, NJ 08250-0582

    *Counsel for Defendants*

**WILLIAMS, District Judge:**

**INTRODUCTION**

Plaintiffs Vladislav Nazarov and Brigantine's Freshery LLC (together, "Plaintiffs") bring this action against the City of Brigantine and seven government-affiliated individuals (collectively, "Defendants"), alleging various federal and state constitutional violations. Specifically, Plaintiffs claim that Defendants violated their rights by not allowing them to participate in the Brigantine Farmers' Market during the 2022 and 2023 seasons.

Presently before the Court is Defendants' Motion for Summary Judgment and Plaintiffs'

Cross-Motion for Summary Judgment. (ECF Nos. 41, 43). For the reasons set forth below, Defendants' Motion will be granted and Plaintiffs' Motion will be denied.[1]

## I. BACKGROUND[2]

### A. The Brigantine Farmers' Market

On February 15, 2017, the City Council of the City of Brigantine (the "City") adopted Ordinance No. 3-2017, which created the "Brigantine Green Team"—an advisory committee to the City's Department of Public Works. (Pls.' Cross SMF ¶ 1; Defs.' Resp. Cross SMF ¶ 1; SMF ¶ 26; RSMF ¶ 26; ECF No. 41-3 at 99.) Members of the Green Team were appointed by the Brigantine City Council and were responsible for recruiting volunteers to work on various Green Team projects. (SMF ¶ 26; RSMF ¶ 26; ECF No. 41-3 at 99.) One of the Green Team's projects was managing and coordinating the activities of the Brigantine Farmers' Market—a non-profit entity that organizes a seasonal farmers' market (the "Market"). (SMF ¶¶ 14, 26; Pls.' CSMF ¶¶ 2, 3; Defs.' Resp. Cross SMF ¶¶ 2, 3; ECF No. 41-3 at 25.) The City dedicates public property in Brigantine to host the Market's four-hour events, which take place weekly between Memorial Day and Labor Day. (Pls.' Cross SMF ¶ 5–7; Defs.' Resp. Cross SMF ¶ 5–7.) The stated goals of the Market during the relevant time period were primarily to: (1) provide local access for acquiring fresh and healthy food; (2) support and promote local businesses[3]; (3) enhance exposure for Brigantine businesses; and, (4) increase community awareness of sustainability by interacting with farmers and artisans. (Pls.' Cross SMF ¶ 8; Defs.' Resp. Cross SMF ¶ 8.)

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

[2] For purposes of the instant Motion, this Court shall refer to Defendants' Statement of Undisputed Material Facts as "SMF," Plaintiffs' Response as "RSMF," Plaintiffs' Cross Statement of Material Facts as "Pls.' Cross SMF" and Defendants' Response thereto as "Defs.' Resp. Cross SMF."

[3] Brigantine businesses were the priority and businesses within 50 miles of the City were considered "local"

Before the start of every season, returning or prospective full-time vendors were required to submit applications to the Market for space. (Pls.' Cross SMF ¶ 9; Defs.' Resp. Cross SMF ¶ 9.) These vendor applications were then reviewed and "scored" by seven Market volunteers (together, the "Committee), all of whom have been named as defendants in this action.[4] (SMF ¶ 28; RSMF ¶¶ 27, 28; Pls.' Cross SMF ¶ 4; Defs.' Resp. Cross SMF ¶ 4; ECF No. 41-3 at 60, 82, 117.) Though the selection of vendors was at least partly discretionary, the Committee's Rules and Regulations prescribed the weighing of five factors when reviewing vendor applications: (1) whether the business is located in Brigantine or operated by a Brigantine resident; (2) whether the operation is located in New Jersey; (3) whether the vendor is a returning vendor; (4) percentage of product that is directly agricultural or produced in New Jersey with New Jersey materials; and, (5) saturation of that type of product at the market (exclusivity should not be assumed). (Pls.' Cross SMF ¶ 11; Defs.' Resp. Cross SMF ¶ 11.) The Committee also utilized the following rubric or "score card":

---

[4] These individuals are John Addrizzo, Karen Geller, Jeanette Kessler, Sharon Lavinson, Janet Lieberman, Donna Piekarski, and Fran Paullin.

**Farmers Market Applicant Score Card**

| Applicant | | | | | | | Accepted/Not Accepted/Wait List |
|---|---|---|---|---|---|---|---|
| Applicant Product | | | | | | | Pop Up/Full Time |
| Objective Scoring | | | | | | | |
| Brigantine Resident – either rent with lease, homeowner or second homeowner | | | | | | | |
| 50 miles – local | | | | | | | |
| New Jersey State | | | | | | | |
| Returning Vendor in good standing | | | | | | | |
| An original/unique item to the market/no over-saturation | | | | | | | |
| Product Meets Criteria – Farmed, fished, crafter, cooked, etc. NO RETAIL | | | | | | | |
| EBT/Vouchers accepted | | | | | | | |
| Organic (only if a grower/farmer) | | | | | | | |
| Registered Business/ insured/licensed already | | | | | | | |
| Established commercial kitchen/Health Dept. licensed | | | | | | | |
| Application complete and all requirements met. | | | | | | | |
| Website/photos or samples submitted | | | | | | | |
| Documented prior success selling product | | | | | | | |
| Subjective Scoring | | | | | | | |
| Item a good fit for Market | | | | | | | |
| Product is of high quality and will add value to Market | | | | | | | |
| Vendor is already or is anticipated to be be a good partner to the Market | | | | | | | |
| Votes | JA | K | JK | S | JL | D | F |
| Full Time Yes | | | | | | | |
| Full Time No | | | | | | | |
| Pop Up Yes | | | | | | | |
| Pop up No | | | | | | | |
| Wait List/No guarantee | | | | | | | |

(SMF ¶ 28; RSMF ¶ 28; ECF No. 41-3 at 104.)  The responses to the "Subjective Scoring" portion of the rubric were left to the sole discretion of each Committee member, who "reserve[d] the right to accept or reject any and all applications if it is in the best interest of the Market."  (ECF No. 41-3 at 88.)[5]  An explanation of the discretionary aspect of the review process was contained in "Step 2" of the Vendor Application documents provided to each applicant.  (ECF No. 41-3 at 88.)

The vendor applications themselves also notified applicants of the following:

-   The Brigantine Farmers Market Committee will fully evaluate every application to determine if "your product meets the criteria for participation in the Brigantine Famers Market.  Each application is reviewed and voted on based on our requirements, and how to best serve our community and the best interest of the vendors. You will be notified of the BFMS's decision";

[5] *See also* ECF No. 41-3 at 81 ("The Brigantine Farmers Market Committee, further known as the BFMC, will fully evaluate every application to determine if your product meets the criteria for participation in the Brigantine Farmers Market. Each application is reviewed and voted on based on our requirements, and how to best serve our community and the best interest of the vendors. You will be notified of the BFMC's decision.")

- The Brigantine Farmers Market is "a sub-det of the Brigantine Green Team. The BFMC is an all-volunteer group of full and part-time Brigantine residents";

- "The number of vendors shall be determined [by the Brigantine Farmers Market Committee] at the sole discretion of the BFMC within the confines of available space";

- The Brigantine Farmers Market Committee "shall be the sole judge concerning the merits of all applications submitted";

- "Vendors area selected at the discretion of the BFMC. All applications will be kept for reference should it be determined that the Market would benefit by the addition of vendors";

- "2.05 EXCLUSIVITY There is no assumption of exclusivity when a vendor is approved. The BFMC reserves the right to approve vendors that may have some crossover products. We are careful in our selection process"; and,

- "2.06 REJECTION OF APPLICATION The BFMC reserves the right to accept or reject any and all applications and to waive any immaterial defects or informality in any application if it is in the best interest of the Market to do so. The determination of a material defect shall be a matter solely within the discretion of the BFMC."

(SMF ¶ 25; RSMF ¶ 25.)

**B.    Plaintiff Nazarov Moves to Brigantine and Opens "Brigantine's Freshery"**

In 2018,[6] Plaintiff Vladislav Nazarov moved from New York to Brigantine, and in September 2019 opened Brigantine's Freshery (the "Freshery")—a "clean food store" that offers produce from local farmers, as well as homemade food and fresh-squeezed/cold-pressed juices. (SMF ¶¶ 5–6; ECF No. 41-3 at 56; Pls.' Cross SMF ¶ 13; Defs.' Resp. Cross SMF ¶ 13.) The Freshery's offerings were not exclusively organic. (SMF ¶¶ 7, 8.) From Memorial Day through October 31st each year, the Freshery is open from 8:00 a.m. until 5:00 p.m. (SMF ¶ 10; RSMF ¶ 10.)

---

[6] On August 14, 2023, Nazarov testified that he moved to Brigantine five years earlier. (ECF No. 41-3 at 56.)

### C.   Plaintiffs Seek Vendor Space at the Market

In 2020, Plaintiffs joined the Brigantine Chamber of Commerce and also applied to the Market to sell organic and vegan/plant-based hot dogs purchased from a supplier and cooked on-site. (SMF ¶¶ 6, 15; ECF No. 41-3 at 62.)  The Committee, however, denied Plaintiffs' applications because the hot dogs were deemed "not a good fit" for the Market.  (SMF ¶ 15; ECF No. 41-3 at 63.)

In 2021, Nazarov again applied to secure space at the Market for the upcoming summer season, this time as an artisan selling resin dining room and coffee tables. (SMF ¶ 16; ECF No. 41-3 at 64.)  The Committee denied this application as well, citing a lack of available space. (SMF ¶ 16; ECF No. 41-3 at 64.)

On January 22, 2022, Nazarov applied as a "non-returning" Brigantine-based business seeking to sell organic juices at the Market.  (SMF ¶¶ 17, 29; RSMF ¶¶ 17, 29; Pls.' Cross SMF ¶¶ 14, 15, 16; Defs.' Resp. Cross SMF ¶¶ 14, 15, 16; ECF No. 41-3 at 112, 117.)  The Committee unanimously voted to deny this application because "they had two returning fresh juice vendors." (Defs.' Resp. Cross SMF ¶ 18.)  Specifically, the Committee informed Plaintiffs that they have "become highly successful in part because we carefully curate the selection of products.  From a business perspective, we also limit the number of the same or similar offerings based upon experience and market trends. We do not guarantee exclusivity to any vendor, yet we do not want to oversaturate the market. It is a careful balance that has proven to be successful."  (SMF ¶ 30; ECF No. 41-3 at 108.)  On March 6, 2022, Committee member/Defendant Fran Paullin sent Plaintiffs the following email:

> Thank you for your interest in being a part of the 2022 Brigantine Farmers Market. You have participated in the Market, so you know that our primary focus is on produce, meat and dairy products from area farms along with locally harvested seafood and freshly prepared foods. You also know that we have a limited footprint.

Despite this constraint, we try to accommodate farmers needing extra space. In our selection process we give priority to Brigantine residents whose product meets Market standards and to returning full-season vendors. This leaves us with few spaces for new artisan vendors. To ensure profitability for all, we limit the number of vendors with the same or comparable products. Unfortunately, despite the high quality of your offerings, we are not able to accommodate you this year because we already have two returning fresh juice vendors. Since you are a Brigantine business, you are likely a Chamber Member. This year the Market is reserving five spaces each week for a rotating group of Chamber Members. If you are a member in good standing, you can contact Kelly Lentz to request a spot in the Chamber Corner. Thank you again and we wish you a fun and successful summer.

(SMF ¶ 31; RSMF ¶ 31; Pls.' Cross SMF ¶¶ 20, 23; Defs.' Resp. Cross SMF ¶¶ 20, 23.)

In a subsequent correspondence prepared on Brigantine Farmers Market letter, a Committee member further explained: "[f]rom a business perspective, we . . . . limit the number of the same or similar offerings based upon experience and market trends. We do not guarantee exclusivity to any vendor, yet we do not want to oversaturate the market. It is a careful balance that has proven successful." (Pls.' Cross SMF ¶ 21; Defs.' Resp. Cross SMF ¶ 21.)

Plaintiff Nazarov estimates he lost $2,000 for each Saturday event he would have participated in throughout the 2022 season, had the Committee approved his application. (SMF ¶ 22; RSMF ¶ 22.) In reaching this figure, Nazarov assumed approximately 250 people would have purchased his fresh-squeezed juices at a cost of $8.00 per drink and that most of his earnings would have been profit. (SMF ¶ 22; RSMF ¶ 22.) In reaching these figures, Nazarov does not take costs into consideration, which would have included materials and labor. (SMF ¶ 22; ECF No. 41-3 at 72-73.)

After receiving the Committee's 2022 denial letter, Nazarov received a telephone call from an individual affiliated with the Market, inquiring if Plaintiffs would like to participate in the Market's spring event. (SMF ¶ 20; RSMF ¶ 20.) Nazarov testified that although he would have loved to participate, he had to decline because the Freshery would not open before the event took

place. (SMF ¶ 20; RSMF ¶ 20; ECF No. 41-3 at 66.) Additionally, Plaintiffs were also offered space at the Market that was specifically designated for Chamber of Commerce members, free of charge. (SMF ¶ 21; 41-3 at 83.) Although only a maximum of six members may utilize the Chamber of Commerce space at the Market, Plaintiff was provided with an opportunity to sell his juices there for nine out of fifteen weekends during the 2022 season. (SMF ¶¶ 21, 32; ECF No. 41-3 at 83, 114.)

In November 2022, Plaintiff Nazarov listed the Freshery for sale with a realty group and subsequently began a construction and interior design company the following year, which he named "Kitchen and Bathroom Rescue." (SMF ¶ 9; ECF No. 41-3 at 57, 59.) For the 2023 season, Nazarov again applied to be a vendor at the Farmers' Market selling fresh-squeezed juices and his request was once more denied because the Market already had two returning juice vendors. (SMF ¶ 23; RSMF ¶ 23; Defs.' Resp. Cross SMF ¶ 28; ECF No. 41-3 at 112.) Specifically, the Committee informed Plaintiffs "We have limited space each year. To ensure profitability for all vendors, we carefully curate our vendors and while exclusivity is not guaranteed, we limit the number of vendors with the same or similar type of products. We have returning vendors with similar products and thereafter we are not able to accommodate you this year[.]" (Pls.' Cross SMF ¶¶ 21, 30, 32, 33; Defs.' Resp. Cross SMF ¶¶ 21, 30; ECF Nos. 41-1 at 10, 44-1 at 4.)

Plaintiffs were no longer members of the Chamber of Commerce and were therefore unable to use its reserved space for the 2023 summer season. (SMF ¶ 24; RSMF ¶ 24.) Plaintiff Nazarov testified that he did not renew the membership in 2023 because he felt it was no longer a "good fit[,]" he "didn't see any reason for it[,]" and "the application fee was a little bit of a problem" because "it was a very tough year for us." (SMF ¶¶ 12, 13; RSMF ¶¶ 12, 13; ECF No. 41-3 at 23, 76.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotations omitted). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements[.]'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### III.   DISCUSSION

As previously indicated, Plaintiffs bring this suit against the City of Brigantine and the seven Committee volunteers over the denial of their vendor applications to participate in the Brigantine Farmers' Market during the 2022 and 2023 seasons. To this end, Plaintiffs assert various federal and state law claims, each of which generally allege that Defendants have deprived them of equal protection under the constitutions of both the United States and the State of New Jersey. The Court addresses each claim in turn.

### A.   <u>Fourteenth Amendment – Facial Validity</u>

Invoking the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs challenge the facial validity of the "five factors" the Committee utilizes when assessing a prospective vendor's application for space at the Market:

- Whether the business is located in Brigantine or operated by a Brigantine resident;

- Whether the operation is located in New Jersey;

- Whether the vendor is a returning vendor;

- Percentage of product that is directly agricultural or produced in New Jersey with New Jersey materials; and,

- Saturation of that type of product at the market (exclusivity should not be assumed).

(ECF No. 41-3 at 88.) According to Plaintiffs, these factors constitute an unconstitutional, government "regulation" because they "create[e] a classification of applicants for full-season vendor space for a Market season who are denied vendor space, who, collectively, are treated differently from other, similarly situated applicants for full-season vendor space for a Market season who are granted vendor space." (ECF No. 39 at 18; ECF No. 43-2 at 6–7.)

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

It provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. When reviewing an Equal Protection claim, courts must first determine "whether the alleged state action burdens a fundamental constitutional right or targets a suspect class." *State Troopers Non-Commissioned Officers Ass'n of New Jersey v. New Jersey*, 399 F. App'x 752, 754 (3d Cir. 2010). A classification that "trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage . . . must meet the strict scrutiny standard, under which a law must be narrowly tailored to further a compelling government interest." *Schumacher v. Nix*, 965 F.2d 1262, 1266 (3d Cir. 1992) (citation and internal quotation marks omitted). However, "[i]f a classification neither burdens a fundamental right nor targets a suspect class, [courts] will uphold it so long as it bears a rational relation to some legitimate end." *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 213 (3d Cir. 2013) (internal quotation marks omitted).

As an initial matter, the Court first observes Plaintiffs' concession that the challenged factors do not implicate a fundamental right or otherwise draw distinctions based on a suspect classification, and that rational basis scrutiny thus governs their challenge. Against this backdrop, Plaintiffs theorize that the factors amount to an unconstitutional social and/or economic regulation because they do not bear a rational relation to a legitimate government interest. The Court is unpersuaded.

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications*, 508 U.S. 307, 313 (1993). Thus, to succeed on an Equal Protection challenge, a plaintiff must demonstrate that "no set of

11

circumstances" exist under which the challenged legislative measure would be valid. *See United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Despite raising a facial challenge, Plaintiffs do not articulate how exactly the interests underlying these factors are illegitimate. Nor do they meaningfully explain how these factors are wholly unrelated to the furtherance of those interests. In this Court's view, the interests underlying the challenged factors appear to be entirely legitimate on their face. The Committee's reliance on those factors likewise appear to further those interests.

Instructive to this Court's assessment of the Factors at issue, is the legislative provision from which they arise:

The Court first observes the legislative provision from which these factors arise:

§ 65-2 Purpose.

The general purpose for the Green Team shall include, but not be limited to:

A.  Managing Brigantine's participation in the Sustainable Jersey program;

B.  Encouraging the City's staff to pursue sustainable practices where possible and implement the City Council's environmental goals;

C.  Work with the existing groups within the City whose actions affect environmental issues so as to eliminate duplication and assure that important tasks are covered;

D.  Provide input for the City of Brigantine website;

E.  Provide suggestions for further research and action to the City Council;

F.  Provide advice and suggestions to the Planning Board, Zoning Board of Adjustment and other environmental entities to assure that environmental issues are considered in their deliberations and actions;

G.  *Manage and coordinate the Brigantine Farmers' Market*;

H.  Solicit and evaluate environmental ideas and suggestions from the

community; and

    I. Promote the causes of sustainability with the City.

City of Brigantine, N.J., Ordinance 3-2017 (Feb. 15, 2017) (emphasis added). The express goals

of the Market are as follows:

- Provide local access for acquiring fresh and healthy good[;]

- Support and promote local businesses (Brigantine businesses as our
  priority and up to 50 miles considered local)[;]

- Enhance exposure for Brigantine businesses[;] [and,]

- Increase community awareness of sustainability by interacting with
  farmers and artisans[.]

(ECF No. 41-3 at 87.) Prospective vendors, including Plaintiffs, were apprised of these very same

goals:

> [t]he goal of the BRIGANTINE FARMERS MARKET is to bring fresh and locally
> grown produce and artisanal products to Brigantine residents and visitors. This
> mission helps to sustain and preserve farms in our Garden State, contributes to the
> public health and increases community awareness of sustainability by interacting
> with farmers and artisans.
>
> The market is backed by the City of Brigantine and operated as a community
> service by the Brigantine Farmers Market Committee, a sub-set of the Brigantine
> Green Team. The BFMC is an all-volunteer group of full and part- time Brigantine
> residents. The BFMC plans, manages, and promotes the market, assisted by a larger
> group of volunteers and friends who provide essential market day support. The
> Market's yearly operating budget is comprised of participants' Market fees and
> sponsor contributions.
>
> The market rules are the standards by which the BRIGANTINE FARMERS
> MARKET operates. Participants must abide by these standards: failure to adhere to
> the standards may result in loss of permission to sell.

(ECF No. 41-3 at 82) (emphasis in original).

    Plaintiffs have provided no evidence suggesting that these goals are illegitimate. Nor have

they offered any meaningful argument demonstrating that the five factors they challenge are

wholly and irrationally unrelated to these goals. As far as the Court can discern, Plaintiffs take

issue with the factors insofar as they appear to draw distinctions that tend to favor some vendors

over others. That alone, however, does not portend facial invalidity. As observed by another

district court in a remarkably similar case:

> The Equal Protection Clause does not forbid classifications. It simply keeps
> governmental decision makers from treating differently persons who are in all
> relevant respects alike. Unless a suspect class or fundamental right is at issue,
> classifications made by governmental entities need only be rationally related to a
> legitimate state interest. The great deference granted to lawmakers is especially
> lenient in cases involving economic classifications. Although the distinctions made
> between groups may seem arbitrary, the fact [that] the line might have been drawn
> differently at some points is a matter for legislative, rather than judicial,
> consideration. The regulating body is not required to achieve perfection or
> mathematical exactitude.  Furthermore, the actual legislative intent is irrelevant.

*Levin v. City of Palm Beach Gardens*, CASE NO. 06-81315-CIV, 2007 U.S. Dist. LEXIS 112212,

at *7-8 (S.D. Fl. Nov. 19, 2007). The *Levin* court further observed:

> The City also stated that "[s]urely, support of agriculture and home grown business
> is a legitimate, local governmental interest . . . [and] is clearly an economic, 'line
> drawing' that is within the purview of the City in keeping with the mission of the
> event and an area where courts have to show a paradigm of judicial restraint." The
> Court in its prior Order agreed and found that "the City clearly has stated a
> legitimate purpose, as demonstrated by Plaintiff's inclusion of the GreenMarket's
> mission statement. Furthermore, it is not irrational for the City to believe that
> classification of potential vendors, with corresponding differentiation in access,
> may assist the City in creating the type of event it desires. Consequently, the basic
> policy of categorizing vendors passes rational basis scrutiny." Therefore, as a
> matter of law, the vendor classifications pass rational basis scrutiny.

*Id.* at *9-10.

> This ruling was subsequently affirmed by the Eleventh Circuit:

> Upon review of the record and the parties' briefs, we conclude that the district court
> did not err in finding that the City's vendor classifications were rationally related
> to a legitimate government interest. Appellant's argument is based on his claim that
> the only valid governmental interest in running the Market is the promotion of local
> growers and agriculture. However, the Market's mission statement for 2006-2007,
> the first Market season which used the vendor subcategories that Appellant
> challenges, sets forth a legitimate municipal objective of providing a "'green'

14

> shopping opportunity and a cultural event" for the northern Palm Beach County area. The City could rationally have concluded that "Business/Exporter/Importer" vendors were not "essential to the mission of the Market," and that limiting their presence to certain special market days would help create the type of shopping opportunity and cultural event the City desired to provide to the area. As a result, we affirm the district court's finding that the vendor classifications passed rational basis review.

*Levin v. City of Palm Beach Gardens*, 303 F. App'x 847, 850 (11th Cir. 2008).

But even if Plaintiffs could come forward with some articulable imperfections in these measures, that would still not be enough to succeed on an Equal Protection claim. As one California court accurately recognized,

> Rational-basis review in equal-protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. Because the court is not a super-legislature that sits in judgment of the wisdom or desirability of legislative policy, there is a strong presumption that governmental classifications do not violate the Equal Protection Clause unless they burden a suspect class or a fundamental interest. Rational-basis review does not require the government's action actually advance its stated purposes, but merely that the government could have had a legitimate reason for acting as it did.

*Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp. 2d 987, 1008-1009 (E.D. Cal. July 3, 2006) (citations omitted).

Plaintiffs have failed to carry their burden of showing that "no set of circumstances" exists under which the challenged factors would be valid. *See United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011). Consequently, their facial challenge to the same under the Equal Protection Clause necessarily fails.

## B.   Fourteenth Amendment – Class-of-One Theory

Plaintiffs have also asserted an Equal Protection claim based on a "class-of-one" theory. Although Equal Protection challenges most often allege class-based discrimination, such claims may be sustained where a plaintiff claims that she has been irrationally singled out as a so-called "class of one." *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). To prevail under a

class-of-one theory, a plaintiff must come forward with evidence demonstrating that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in treatment. *See Thomas v. E. Orange Bd. of Educ.*, 998 F. Supp. 2d 338, 352 (D.N.J. 2014); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Here, Plaintiffs' class-of-one theory fails on all fronts.

First, Plaintiffs have pointed to no evidence suggesting that they were treated less favorably than other, similarly situated vendors. For purposes of an Equal Protection analysis, persons are "similarly situated" when they are "alike in all relevant respects." *Joey's Auto Repair & Body Shop v. Fayette Cty.*, 785 Fed. Appx. 46, 49 (3d Cir. 2019) (internal quotation marks omitted). In their Opposition to Defendants' Motion, Plaintiffs state they "can show others who were similarly situated who were treated better, so their class of one equal protection claims does not fail for lack of comparators." (ECF No. 44 at 8.) Clearly, Plaintiffs have misapprehended their burden. This matter is currently at the summary judgment stage. To the extent such evidence exists, now is the time for Plaintiffs to present it. As far as this Court can discern, no such evidence has been presented because no such evidence exists.

There is nothing in the record suggesting that new applicants other than Plaintiffs were denied space at the Market solely because said applicants were not "returning" vendors. The record is further devoid of any evidence to demonstrate the number of new vendors versus the number of returning vendors and what they were selling for the 2022 and 2023 seasons, as the Factors take into consideration "saturation" of any particular "type" of product at the Market. (ECF No. 41-3 at 88.)[7]

---

[7] *See also* ECF 41-3 at 108 ("All vendors, including farmers and those who have been partners since our first year, are required to complete an application every year and to meet the current requirements outlined in our rules, such as commercial kitchens for food vendors, licenses and liability insurance. Between January and March, applications are reviewed regularly as they arrive. Once all available spots are filled, an applicant may be declined.")

Second, Plaintiffs have failed to establish any intentional treatment by Defendants. Beyond citing to his subjective beliefs, Plaintiff has adduced no evidence demonstrating that the challenged factors were adopted or applied for the purpose of excluding Plaintiffs from the Market. The record shows that Plaintiffs' 2022 and 2023 applications were rejected on completely objective grounds— the items Plaintiff Nazarov intended to sell were not original or unique and would have resulted in oversaturation because the Market already had two returning juice vendors. (ECF No. 41-3 at 112, 120.) The fact that Committee members exercised some degree of discretion when deciding on applications does not alter this conclusion. Indeed, when one considers the goals of the Green Team/Committee—to help "sustain and preserve farms in our Garden State, contribute[] to the public health and increase[]community awareness of sustainability by interacting with farmers and artisans"—it is clear the factors are nothing more than a tool used by the Committee to ensure these goals are met. *See McKeithan*, 2014 U.S. Dist. LEXIS 102687, at *19-20 ("[I]t is clear that a rational basis exists that permit the discretionary decision makers at SCI-Mahanoy to make individual determinations about which privileges to reward to different inmates who are on RRL status within each institution.").[8]

Contrary to Plaintiffs' conclusory assertions, the record more readily suggests that Plaintiffs were treated better than "equal." On numerous occasions, Defendants tried to offer Plaintiffs assistance by inviting them to participate in the Spring Market, providing them with detailed information regarding the "scoring" of applicants, informing them of the free space they could obtain through the Chamber of Commerce, and encouraging them to apply again for the

---

[8] Separately, the Court notes that Plaintiffs have failed to submit testimony from any of the Committee members that could ostensibly provide further insight into their decisionmaking regarding Plaintiffs' 2022 and 2023 applications. In this regard, the only remotely probative evidence is select interrogatory responses from volunteer Committee member Donna Piekarski, who attests to the fact that Plaintiffs' 2022 application was denied by unanimous vote of the entire Committee because the Market already had two returning juice vendors for that season. (ECF No. 41-3 at 117.)

following season.  (SMF ¶¶ 20, 31; RSMF ¶¶ 20, 31; Pls.' Cross SMF ¶¶ 20, 23; Defs.' Resp. Cross SMF ¶¶ 20, 23.) Notwithstanding the fact there were already two juice vendors accepted to participate in the 2022 Market, the Committee extended an invitation for Plaintiffs to participate in the 2022 Spring Market, but they declined to do so.  Plaintiff Nazarov was also informed by the Committee that he could request space at the Market through the Chamber of Commerce.  He did so and was provided nine free weeks of vendor space.  But for the fact Nazarov declined to join the Chamber of Commerce in 2023, the possibility that he would have been afforded the same benefit during the 2023 Market season cannot be precluded. But even if Plaintiffs could substantiate their complaints over the lack of an "even playing field," such a complaint evinces nothing more than a disproportionate effect of the factors, which is insufficient to carry an Equal Protection claim. *See Stehney v. Perry*, 101 F.3d 925, 937 (3d Cir. 1996) ("[A] facially neutral policy does not violate equal protection solely because of disproportionate effects.").

Lastly, Plaintiffs have failed to show that there was no rational basis for the treatment of which they complaint. As with any Equal Protection challenge, a plaintiff proceeding under a class-of-one theory also bears the burden of "negating all conceivable rational justifications for the allegedly discriminatory action or statute." *RHJ Med. Ctr., Inc. v. City of Dubois*, CIVIL ACTION NO. 3:09-cv-131, 2012 U.S. Dist. LEXIS 197379, at *60-61 (W.D. Pa. Aug. 17, 2024) (internal quotation marks omitted). Here, Plaintiffs submit that the Committee was equivalent to a local government agency and that—by promulgating "a regulation to govern its selection process of full-season vendors"—it "clearly evoke[d] economic protectionism of the returning full-season fresh juice vendors as the reason for the denial of space at the 2022 and 2023 Markets[.]  (ECF No. 43-2 at 10–11.)  Plaintiffs conclude that, "[s]ince the plain reason was to protect the profits of the returning full-season fresh juice vendors from competition by a newcomer, the denial violated

Plaintiffs' right.  The regulation which allowed protection of the profits of returning full-season vendors to be a factor was unconstitutional."  (ECF No. 43-2 at 10-11; ECF No. 44 at 14–15.) The Court is unpersuaded.

The doctrine of economic protectionism is a "regulatory measure[] designed to benefit in-state economic interests by burdening out-of-state competitors.'"  *N.J. Staffing All. v. Fais*, No. 1:23-cv-02494, 2023 U.S. Dist. LEXIS 129331, at *22 (D.N.J. July 26, 2023) (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008)); *see also American Resort Dev. Ass'n v. Gov't of the V.I.*, 848 F. App'x 79, 82 (3d Cir. 2021) ("[T]he differential treatment that justifies a finding of discriminatory effect occurs when a state engages in economic protectionism that 'creates … barriers … against interstate' firms, 'prohibit[s] the flow of interstate goods, place[s] added costs upon them, or distinguish[es] between in-state and out-of-state companies' in a state's internal market.") (quoting *Exxon Corp. v. Governor*, 437 U.S. 117, 126 (1978)); *MARJAC, LLC v. Trenk*, 380 F. App'x 142, 146 (3d Cir, 2010) (recognizing economic protectionism as a law that "disadvantages out-of-state businesses to benefit in-state ones.") (quoting *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 462 F.3d 249, 261–62 (3d Cir. 2006)); *Old Bridge Chemicals, Inc. v. New Jersey Dep't of Environmental Protection*, 965 F.2d 1287, 1294 n.5 (3d Cir. 1992) ("A state law may constitute 'economic protectionism' on proof of either discriminatory purpose or discriminatory effect" on interstate commerce.)

Notwithstanding the absence of any interstate commerce issue here, Plaintiffs do not specify what "right" they have to sell juice at a local farmers' market.  In support of their argument, Plaintiffs rely heavily on the Kentucky matter of *Tiwari v. Friedlander*, 26 F. 4th 355 (6ᵗʰ Cir. 2022), *cert. denied*, 143 S. Ct. 444, 214 L. Ed. 2d 253 (Nov. 21, 2022).  In *Tiwari*, the Commonwealth of Kentucky denied Plaintiffs a "certificate-of-need," which was necessary in

order for Plaintiffs to open a home health care facility in Kentucky. The District Court granted summary judgment to Defendants and Plaintiffs appealed. The policy at issue required "new entrants to show that at least 250 patients need the service while it requires existing companies to show that at least 125 patients need the expanded service." *Id.* at 359. Plaintiffs argued this constituted economic protectionism and the appeals court determined Plaintiffs failed to prove there was no rational basis between the statute and the State's goal of "further[ing] healthcare in Kentucky." *Id.* at 364. The court further noted that "[n]one of [Plaintiffs'] evidence puts the law's connection to quality beyond dispute, even if it strengthens considerably one side of the policy dispute." *Id.* at 366. Therefore, the court concluded Plaintiffs' "evidence does not reject beyond question the notion that a legislator could at least rationally think that the law would facilitate cost efficiency and that cost efficiency could benefit the public down the road." *Id.* at 367. Additionally, the court opined that "[n]ew entrants will likely have more overhead and more difficulty spreading those costs than existing market participants with higher patient volumes. Hence the lower threshold for the incumbent. The disparity comports with the law's justifications, or at least a legislator plausibly could think so." *Id.* at 368. In the end, the question remains "not whether a law in fact is rational [but] whether a legislator could plausibly think so." *Id.* at 369.

Assuming *arguendo* economic protectionism may be properly construed to apply to this matter, Plaintiffs have failed to set forth evidence of record to show the Committee could not have plausibly thought there was a rational basis underlying the factors that supported the goals of the City, the Green Team, and its Market insist that their vendor applications were not assessed on an "even playing field" on the basis of market saturation and the existence of two returning juice vendors. (ECF No. 41-3 at 71.) Again, "a facially neutral policy does not violate equal protection solely because of disproportionate effects." *Stehney v. Perry*, 101 F.3d 925, 937 (3d Cir. 1996).

In conclusion, Plaintiffs' Equal Protection claim fails because they cannot establish any of the necessary elements to sustain a class-of-one theory. Summary judgment must accordingly be entered.[9]

## C.   Plaintiffs' State Law Claims

A district court has discretion to decline to exercise supplemental jurisdiction over a plaintiff's state law claims if it "has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). "Where the claims over which the district court had original jurisdiction are dismissed before trial, 'the district court *must* decline to decide the pendent state claims *unless* considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Christie*, 850 F. Supp. 2d 455, 462 (D.N.J. 2012) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)) (emphasis added).

Inasmuch as judgment is being granted in favor of Defendants on all of Plaintiffs' federal claims and there is no affirmative justification for retaining jurisdiction over Plaintiffs' remaining state law claims, the court shall decline to exercise supplemental jurisdiction in this matter. *See D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 552 F. App'x 110, 117 (3d Cir. 2014) (affirming

---

[9] Because Plaintiffs have failed to establish the violation of a constitutional right, Plaintiff's remaining *Monell* claims necessarily fail as a result. *See Citadel*, 2023 U.S. Dist. LEXIS 210115, at *45 ("Plaintiff having failed to make out a claim of a constitutional violation cannot make out a *Monell* claim against the municipality."). The Court likewise need not weigh in any arguments the parties have raised concerning individual immunity or the availability of punitive damages. *See Bethune v. Owens*, Civil Action No. 17-cv-0977, 2019 U.S. Dist. LEXIS 135993, at *5 (D.N.J. Aug. 12, 2019) ("Given that summary judgment is proper, there being no proof of a constitutional violation, the Court need not address the qualified immunity defense."); *Gentile v. DES, Props.*, 3:08-CV-2330, 2012 U.S. Dist. LEXIS 94657, at *28 n.11 (M.D. Pa. July 9, 2012) (concluding entry of summary judgment mooted defendants' absolute immunity defense); *Bradley v. Atl. City Bd. of Educ.*, 736 F. Supp. 2d 891, 893 n.3 (D.N.J. 2010) (denying as moot Defendant's motion for summary judgment on the issue of punitive damages after granting "judgment in favor of Defendants on all liability issues").

district court Order that declined to exercise supplemental jurisdiction over a plaintiff's remaining state law claims following entry of summary judgment as to federal law claims).

## V. CONCLUSION

For the reasons set forth above, the Court grants Defendants' Motion insofar as it seeks the entry of summary judgment on Plaintiffs' federal law claims. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and dismisses them accordingly without prejudice. Plaintiffs' Cross-Motion for Summary Judgment is denied in its entirety. An Order consistent with this Opinion will be entered.

Date: June 25, 2024

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE